IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | |
| | APPEAL CASE NO. 16-91 |
| DENNIS F. HIGHTOWER, a/k/a<br>DENNIS FOWLER HIGHTOWER | |
| | BANKRUPTCY CASE NO. 13-646-SMT |
| DEBTOR. | |

**<u>OPENING BRIEF OF APPELLANT DORI B. HIGHTOWER</u>**

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
12505 Park Potomac Avenue
Sixth Floor
Potomac, Maryland 20854
*Counsel for Appellant Dori B. Hightower*

## I. Corporate Disclosure Statement

Dori B. Hightower ("Ms. Hightower" or the "Appellant"), appellant herein, being a natural person, no corporate disclosure statement is necessitated by Federal Rule of Bankruptcy Procedure 8012(a).

## II. Table of Contents

I. Corporate Disclosure Statement .......... ii
II. Table of Contents .......... iii
III. Table of Authorities .......... iv
IV. Jurisdictional Statement .......... 1
V. Statement of Issues Presented and Standards of Review .......... 2
VI. Statement of the Case .......... 3
VII. Summary of Argument .......... 5
VIII. Argument .......... 6
a. The Bankruptcy Court Erred in Asserting the Debtor has a Legal Right to Dissolution of His Marriage Through Relief From the Automatic Stay .... 6
b. Connecticut State Law Renders Stay Relief for a Divorce Per Se Inappropriate .......... 10
IX. Conclusion .......... 14
X. Certificate of Compliance & Signature .......... 14
XI. Certificate of Service .......... 15

## III. Table of Authorities

**Cases**

*Bratz v. Bratz*, 4 Conn. App. 504 (1985) ........ 11

*Davis v. Cox*, 356 F.3d 76 (1st Cir. 2004) ........ 3

*Forgione v. Forgione*, 162 Conn. App. 1 (2015) ........ 12

*Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495 (D.C. Cir. 2009) ........ 2

*In re Bajgar*, 104 F.3d 495 (1st Cir.1997) ........ 3

*In re Crysen/Montenay Energy Co.*, 156 B.R. 922 (S.D.N.Y.1993) ........ 2

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) ........ 8, 9

*In re Dill*, 163 B.R. 221 (E.D.N.Y.1994) ........ 2

*In re Dryja*, 425 B.R. 608 (Bankr. D. Colo. 2010) ........ 8, 10

*In re Howell*, 311 B.R. 173 (Bankr. D.N.J. 2004) ........ 12

*In re Indian Palms Associates, Ltd*., 61 F.3d 197 (3d Cir. 1995) ........ 1

*In re Land*, 966 F.2d 1458 (8th Cir. 1992) ........ 1

*In re Nemko, Inc.*, 202 B.R. 673 (E.D.N.Y. 1996) ........ 2

*In re Robbins*, 964 F.2d 342 (4th Cir.1992) ........ 13

*In re Secrest*, 453 B.R. 623 (Bankr. E.D. Va. 2011) ........ 9, 13

*In re Taub*, 413 B.R. 55 (Bankr. E.D.N.Y.2009) ........ 8

*In re Watman*, 301 F.3d 3 (1st Cir.2002) ........ 3

*In re Ziets*, 79 B.R. 222 (Bankr. E.D. Pa. 1987). ........ 9, 10

*Krafick v. Krafick*, 234 Conn. 783 (1995) ........ 11

*North v. North*, 183 Conn. 35 (1981) ........ 11

*Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991)........................................................... 2

*Schmidt v. Schmidt*, 180 Conn. 184 (1980)........................................................................ 11

*Stechel v. Foster*, 125 Conn. App. 441 (Conn. App. 2010)........................................................ 12

*Sunbury v. Sunbury*, 210 Conn. 170 (1989)........................................................................ 11

*Watson v. Watson*, 221 Conn. 698 (1992) ........................................................................ 11

*Wendt v. Wendt*, 1998 WL 161165 (Conn. Super. Ct. 1998)....................................................... 11

**Statutes**

11 U.S.C. § 362.............................................................................................................. 7, 8

28 U.S.C. § 1334............................................................................................................... 1

28 U.S.C. § 157................................................................................................................ 1

28 U.S.C. § 158................................................................................................................ 1

Conn. Gen. Stat. § 46b-81.............................................................................................. 11, 12

**Rules**

Federal Rule of Bankruptcy Procedure 8014.................................................................... 1, 2

**IV. Jurisdictional Statement**

Pursuant to Federal Rule of Bankruptcy Procedure 8014(a)(4)(A), Ms. Hightower contends the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court") enjoyed subject-matter jurisdiction over the matter now presented on appeal. Specifically, this appeal emanates from the granting of a motion for relief from the so-called automatic stay imposed by Section 365 of Title 11 of the United States Code. *See* Appendix at pp. 70-73. Section 157(b)(1) of Title 28 of the United States Code gives bankruptcy courts jurisdiction over all "core proceedings," and the same statute goes on to identify "matters concerning the administration of the estate" and "motions to terminate, annul, or modify the automatic stay" as such core proceedings. 28 U.S.C. § 157(b)(2)(A), 28 U.S.C. § 157(b)(2)(G). *See, e.g., In re Indian Palms Associates, Ltd*., 61 F.3d 197, 200 n.2 (3d Cir. 1995) ("The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(1)–(2), which confers jurisdiction over core proceedings arising under Title 11, including a motion for relief from the automatic stay."); *In re Land*, 966 F.2d 1458 (8th Cir. 1992) ("Relief from the automatic stay is a core proceeding, and the bankruptcy court has the authority to adjudicate a case to finality if it is a core proceeding.") (citing 28 U.S.C. § 157(b)(2)(G); 28 U.S.C. § 157(b)(1)).

Pursuant to Federal Rule of Bankruptcy Procedure 8014(a)(4)(B), Ms. Hightower contends this Honorable Court enjoys jurisdiction over the instant appeal. Specifically, this appeal concerns a final order of the Bankruptcy Court. *See* Appendix at pp. 105-106. Section 158(a)(1) of Title 28 of the United States Code gives "The district courts of the United States" jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). *See, e.g., In re Indian Palms Associates, Ltd*., 61 F.3d at 200 ("The district court had jurisdiction

to entertain an appeal from the bankruptcy court's granting of relief from the stay pursuant to 28 U.S.C. § 158(a)").

Pursuant to Federal Rule of Bankruptcy Procedure 8014(a)(4)(C), Ms. Hightower observes this appeal was noted on January 11, 2016, and emanates from an order signed on January 6, 2016. *See* Appendix at pp. 105-109. Federal Rule of Bankruptcy Procedure 8002(a)(1) allows fourteen (14) days for an appeal to be noticed; here, the appeal was noted in six (6) days and is accordingly timely in nature.

Pursuant to Federal Rule of Bankruptcy Procedure 8014(a)(4)(D), Ms. Hightower notes the instant appeal is from a final order. *See* Appendix at pp. 105-106.

**V. Statement of Issues Presented and Standards of Review**

The instant appeal presents two issues for this Honorable Court's review: first, determination of the appropriate burden for a party seeking relief from the automatic stay for purposes of proceeding with a domestic relations proceeding and, second, whether or not stay relief can be afforded in light of Connecticut's unusual marital dissolution scheme.

Both issues herein are purely legal in nature and, as such, are governed by a *de novo* standard of review. *See, e.g., Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 496 (D.C. Cir. 2009) ("our review of this legal question is de novo."); *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991) ("We conclude that a court of appeals should review de novo a district court's determination of state law."); *In re Nemko, Inc.*, 202 B.R. 673, 677 (E.D.N.Y. 1996) ("When reviewing decisions made by the Bankruptcy Court, the district court applies the de novo standard of review for questions of law and the "clearly erroneous" standard of review for questions of fact.") (citing *In re Dill*, 163 B.R. 221, 224 (E.D.N.Y.1994); *In re Crysen/Montenay Energy Co.*, 156 B.R. 922, 924 (S.D.N.Y.1993)); *Davis v. Cox*, 356 F.3d 76,

82 (1st Cir. 2004) ("We examine that court's findings of fact for clear error and afford de novo review to its conclusions of law.") (citing *In re Watman*, 301 F.3d 3, 7 (1st Cir.2002); *In re Bajgar*, 104 F.3d 495, 497 (1st Cir.1997)).

## VI. Statement of the Case

This matter concerns the intersection of a domestic relations dissolution proceeding outside the purview of this Honorable Court and a bankruptcy proceeding squarely within this Honorable Court's jurisdictional ambit. The intersection of these two ordinary judicial proceedings has yielded a highly extraordinary circumstance instantly, whereby a debtor in bankruptcy – for reasons that remain at-best murky – has elected to seek relief from the very automatic stay he caused to be imposed, for purposes of winding up his marriage.

Dennis Fowler Hightower ("Mr. Hightower" or the "Debtor") is married to Ms. Hightower. *See* Appendix at p. 71. On October 13, 2011, Ms. Hightower commenced proceedings in the Superior Court for Fairfield County, Connecticut (the "State Court") seeking to dissolve her marriage to Mr. Hightower. *See* Appendix at p. 71.

The State Court proceedings continued uninterrupted until October 11, 2013, when the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, thus commencing the proceedings in the Bankruptcy Court. *See* Appendix at pp. 1-2. At that juncture, by operation of law, the State Court proceedings were halted by the so-called automatic stay. *See* 11 U.S.C. 362. That stay remained in place – without challenge or interruption – at all times relevant until December 1, 2015, when the Debtor petitioned the Bankruptcy Court for relief from the automatic stay. *See* Appendix at pp. 70-73.

While the automatic stay was in place – and before the Debtor took the highly unusual step of attempting to lift his own stay – Ms. Hightower petitioned the Bankruptcy Court for

derivative standing to bring a fraudulent conveyance action against the Debtor, on behalf of his estate. *See* Appendix at pp. 78-79. Neither the resulting order (granting Ms. Hightower derivative standing) order nor aspect of the resulting adversary proceeding are instantly at issue, but they impact the contextual setting of this appeal as they demonstrate Ms. Hightower is a creditor of the Debtor's estate and that Ms. Hightower has elected to use the instrumentalities of the bankruptcy proceeding the Debtor himself created to realize her interest in certain assets and to collect upon a proof of claim she filed therein. *See* Appendix at pp. 26-43, 78-79.

Ms. Hightower objected to the Debtor receiving relief from the automatic stay, noting, *inter alia*, that (i) the request came on the heels of her seeking derivative standing to bring an adversary claim against the Debtor; (ii) granting stay relief would deprive her of jurisdiction to pursue that derivative claim; (iii) it is legally inappropriate for a debtor to seek relief from the automatic stay; (iv) even if a debtor can petition for stay relief the Debtor herein has not made the requisite showing of hardship to warrant stay relief, (v) the burden for a party to obtain stay relief to proceed with a divorce proceeding – where the bankruptcy estate's assets will be, by definition, divided and removed from the Bankruptcy Court's jurisdiction – ought to be appreciably higher than that where "ordinary" stay relief is sought to pursue relief against a fully encumbered asset; and (vi) that Connecticut's highly unusual divorce laws and reliance of an "all property" distribution scheme render it *per se* improper to grant relief from the automatic stay for purposes of pursuing or continuing a divorce in Connecticut state court. *See* Appendix at pp. 82-90.

The Debtor's motion for relief from the automatic stay was granted over Ms. Hightower's objection, and this appeal was thereafter timely brought. *See* Appendix at pp. 105-109.

## VII. Summary of Argument

Ms. Hightower first contends that the Bankruptcy Court did not consider the appropriate burden for a party seeking relief from the automatic stay for purposes of proceeding with a marital dissolution proceeding. The United States Code instructs that stay relief should only be afforded for "cause," and case law teaches myriad of factors to be contemplative of the existence, *vel non*, of cause. Courts are divided on how those factors are to be applied – if at all – to situations where the requested stay relief concerns a divorce proceeding. Ms. Hightower contends that stay relief for a proceeding of the sort ought to be granted only most sparingly, if at all, and only when the requisite factors are demonstrated. Here, the Bankruptcy Court does not appear to have weighed these instructive criteria to any significant degree, if at all.

The Appellant's second contention is that even if stay relief could be afforded for a "traditional" divorce proceeding, the nature and construct of Connecticut state law renders it legally impermissible to afford stay relief for one such proceeding in that state. Connecticut law is uniquely problematic in its demand that an order of marital dissolution accompany an order of proper distribution in pure synchronicity. Pragmatically, this means the seemingly favored route of deferring to a divorce court to determine alimony, formally sever marital bonds, and adjudge child-centric issues, but to refrain from dividing property, is a legal impossibility. Given the absence of this favored alternative, and the seeming lack of precedent for stay relief to be afforded a Connecticut divorce proceeding, it is suggested that stay relief is *per se* improper in the prism of Connecticut marital dissolution law.

## VIII. Argument

### a. The Bankruptcy Court Erred in Asserting the Debtor has a Legal Right to Dissolution of His Marriage Through Relief From the Automatic Stay

One of the more striking aspects of the ruling below is that the Bankruptcy Court proceeded on the apparent assumption that a debtor has a right to pursue a divorce in Connecticut while entangled in his own insolvency proceedings. This is directly contra to both the United States Code and applicable case law, all of which make clear that relief from the automatic stay is never presumed to be proper, and that the party seeking such relief caries a heavy – and well-delineated – burden. Case law further instructs that such burden is magnified when the sought-after relief concerns a divorce proceeding where the debtor's interest in property will be definitively adjudicated.

Here, in considering the stay relief motion of the Debtor, the Bankruptcy Court announced in its oral ruling,[1] "Obviously, [the Debtor is] **entitled** to try to get a divorce proceeding completed." Appendix at 147:14-15 (emphasis added). The Bankruptcy Court subsequently echoed this errant proclamation of law:

> These financial dissolution questions, and division of marital property are more appropriately left to the discretion of the courts that have expertise in addressing marital relations questions, and this Court shouldn't be delving into that, and **Mr. Hightower is entitled to get the dissolution of his marital status so he can move on, free of the bonds of marriage**.

Appendix at 159:16-23 (emphasis added). The court's intervening discussion, between these two quotes, concerns why Ms. Hightower has not succeeded in showing stay relief to be inappropriate – not how, or why, the Debtor has succeeded in showing the propriety of stay

---

[1] The actual written order granting stay relief is silent on the question of what considerations have or have not factored into the relief being afforded. *See* Appendix at p. 105-106.

relief. *See* Appendix at pp. 147-159. Thus the Bankruptcy Court turned the appropriate burden on its head.

Title 11 of the United States Code (the "Bankruptcy Code") itself lays outs the burden of a party seeking relief from the automatic stay:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay (1) for cause, including the lack of adequate protection of an interest in property of such party in interest…[2]

11 U.S.C. § 362(d). And thus the Bankruptcy Code is plain on its face – stay relief is only to be afforded "for cause."

Case law teaches that the determination of such "cause" is a multifaceted and complex matter. It is widely recognized that:

> When determining whether to lift the stay to permit pending litigation in another forum, courts consider several factors, often referred to as the "Curtis factors." Those factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. "Not all of these factors will be relevant in every case ... [a]nd the court need not give equal weight to each factor."

[2] There are other reasons delineated in the United States Code for which stay relief may be afforded. It is not believed that any party contends any of the other such reasons to be pertinent to the case *sub judice*.

*In re Dryja*, 425 B.R. 608, 611 (Bankr. D. Colo. 2010) (citing *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984); quoting *In re Taub*, 413 B.R. 55, 61–62 (Bankr. E.D.N.Y.2009)).

Here, the record reveals the Bankruptcy Court considered none of these factors in its assessment of the Debtor's request for stay relief.[3] To the contrary, and as noted *supra*, the court appeared to operate under the errant position that the Debtor is *entitled* to a divorce and, thus, that the burden would be on an objecting party to show why he ought not be afforded relief from the automatic stay.

The Bankruptcy Code actually operates on a precisely opposite basis. The automatic stay is itself crafted in a manner that makes clear certain divorce-related matters are not stayed by the filing of an insolvency proceeding (and thus do not require petitions for stay relief), but that a property distribution may only be had upon relief from the automatic stay:

> The filing of a petition under section 301, 302, or 303 of this title … does not operate as a stay … of the commencement or continuation of a civil action or proceeding (i) for the establishment of paternity; (ii) for the establishment or modification of an order for domestic support obligations; (iii) concerning child custody or visitation; (iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or (v) regarding domestic violence…

11 U.S.C. 362(b). This is critical – the Bankruptcy Code is express that a proceeding determining "division of property that is property of the estate" is to be stayed by the filing of a bankruptcy petition while myriad other domestic proceedings are not to be stayed by the filing of such a petition. Had Congress intended stay relief to be afforded as nonchalantly as it was here – and without the usual burden of "cause" as was done here – this language would not be present in the

[3] The Bankruptcy Court did make passing reference to the state court having "expertise in addressing marital relations questions," which could be arguably interpreted as a rather fleeting effort to consider the fourth "Curtis Factor." Appendix at 159:16-23. This specific issue, however, is addressed *infra*, in Section VIII(b).

Bankruptcy Code. *See, e.g.*, *In re Secrest*, 453 B.R. 623, 627 (Bankr. E.D. Va. 2011) ("Since the automatic stay applies, relief as to equitable distribution proceedings concerning property of the estate cannot be a matter of right. That would be, effectively, the same as if the automatic stay did not apply in the first instance under § 362(b)(2). The exception in § 362(b)(2)(A)(iv) would then have no meaning. Instead, relief from the automatic stay for equitable distribution proceedings concerning property of the estate is governed by § 362(d)."); *In re Ziets*, 79 B.R. 222, 224-25 (Bankr. E.D. Pa. 1987) ("[I]n the absence of any Code directive of an exception of domestic matters from the scope of the stay in 11 U.S.C. § 362(b), we are disinclined to create one. In fact, the presence of § 362(b)(2), exempting the former scope of the stay only for "the collection of alimony, maintenance, or support from property that is not property of the estate," is evidence that other support-related matters and domestic-relations matters are not carte blanche exempt from the stay.").

More pointedly, however, case law is also instructive that consideration of the *Curtis* factors is accompanied (but not replaced) by a so-called "balance of hardships" analysis when a domestic relations proceeding is involved. As noted by another bankruptcy court in connection with a non-debtor spouse's prayer for stay relief, "Our reasoning process begins by our noting that the Movant is obliged to establish a prima facie cause for relief, and, to prevail, she must convince us that the 'balance of hardships' tips in her favor." *In re Ziets*, 79 B.R. 222, 226 (Bankr. E.D. Pa. 1987).

Here, however, despite Ms. Hightower's urging, the Bankruptcy Court did not engage in a "balance of hardships" analysis – it merely operated on the ill-informed premise that there exists some variety of rebuttable presumption of stay relief for a divorce. This is a marked departure from case law; the ordinary burden of stay relief is heightened by a hardship

requirement in divorce matters – here, the Bankruptcy Court loosened that ordinary burden and altogether skipped the hardship analysis in light of the stay relief being for a divorce matter.

To be sure, this argument is posited as one of law, not fact. Ms. Hightower is not arguing instantly that there did not exist cause for the automatic stay to be lifted;[4] she is positing that the Bankruptcy Court erred in not considering whether or not there was cause and not considering the factors that legally bind such an analysis. The Bankruptcy Court twice pronounced there to be an entitlement to stay relief – such is a plainly errant construction of applicable law, and thus the resulting ruling merits reversal with instructions to reconsider the stay relief motion in the prism of the precedent established by the *Dryja* and *Ziets* Courts.

**b. Connecticut State Law Renders Stay Relief for a Divorce *Per Se* Inappropriate**

A unique attribute of Connecticut state law creates tension with the bankruptcy process: a court is not permitted to enter an order of divorce without dividing the property of its litigants simultaneously therewith or it forfeits jurisdiction to ever enter such an order of division. This unusual regime appears to be directly responsible for a near-wholesale absence of case law evidencing stay relief being afforded to Connecticut divorce proceedings, and for good reason: such an all-or-nothing scheme necessarily deprives an insolvency tribunal of the ability to entertain the customary compromise where a party is allowed to receive an order of divorce but

[4] Of course, this was Ms. Hightower's contention below, and it will likely be her contention upon a remand. The Appellant certainly does not acknowledge the existence of cause; she is merely focusing her appeal on the standard in lieu of the facts since the Bankruptcy Court erred in applying the wrong standard and, thus, never reached the proper factual analysis in the first instance.

not allowed to proceed with a property distribution until his or her spouse's[5] bankruptcy concludes.

Importantly, Connecticut divorce law differs appreciably from that of the District of Columbia or its neighboring states. While notions of "marital property" are no doubt familiar, the state of Connecticut honors no such concept. Rather, as set forth in the state's statutory scheme:

> At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect.

Conn. Gen. Stat. § 46b-81(a). As explained by one Connecticut state court administering a divorce proceeding:

> Connecticut is an equitable distribution state. "[D]issolution of marriage is a creature of statute." By case law Connecticut has been determined to have an "'all-property' equitable distribution scheme." The term "estate" in our equitable distribution scheme permits a court to divide all assets and all liabilities. "In this context, the 'estate' of the parties, as referred to in the statute, comprehends the aggregate of the property and liabilities of each."

*Wendt v. Wendt*, 1998 WL 161165, at *22 (Conn. Super. Ct. 1998) (quoting *Sunbury v. Sunbury*, 210 Conn. 170, 174 (1989); citing *Bratz v. Bratz*, 4 Conn. App. 504, 507 (1985); quoting *Krafick v. Krafick*, 234 Conn. 783, 792 (1995); *Schmidt v. Schmidt*, 180 Conn. 184, 192 (1980); citing *North v. North*, 183 Conn. 35, 39 (1981); *Watson v. Watson*, 221 Conn. 698, 712 (1992)).

The problem this statutory scheme reveals instantly is a pragmatic one: the Connecticut state court literally *cannot* proceed with a divorce of the Debtor and Ms. Hightower without

---

[5] Indeed, another oddity of this case is that it is the Debtor who is seeking stay relief, not Ms. Hightower. There does not appear to be any reported case in any jurisdiction where a debtor is afforded relief to proceed with his or her own divorce; those cases addressing stay relief – many of which are cited herein – universally concern the debtor's spouse petitioning for such relief.

entering an order dividing their property – the actions of decreeing a divorce and dividing property are legally inseparable. As noted by the Connecticut Court of Appeals, in a case decided during the pendency of the stay relief motion below:

> ‘‘It is well settled that [c]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. . . . The court's authority to transfer property appurtenant to a dissolution proceeding rests on . . . [General Statutes] § 46b-81.3 . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage. . . . General Statutes § 46b-86 (a)4 deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under . . . § 46b-81. . . . A court, therefore, does not have the authority to modify the division of property once the dissolution becomes final. . . .”

*Forgione v. Forgione*, 162 Conn. App. 1, 3 (2015) (quoting *Stechel v. Foster*, 125 Conn. App. 441, 446–47 (Conn. App. 2010)).

This quirk of state law is uniquely problematic in light of a Bankruptcy Code that cherishes imbuing a trustee with possession of a debtor's property and not relinquishing the same absent an order of the applicable insolvency tribunal. Indeed, even in cases where stay relief is afforded a spouse to proceed with a divorce, the near-omnipresent compromise is one where the divorce court is permitted to dissolve the formal bonds of matrimony but not to consider the issue of asset distribution. *See, e.g., In re Howell*, 311 B.R. 173, 179-80 (Bankr. D.N.J. 2004) (“The automatic stay does not preclude Rebecca Howell from seeking equitable distribution of non-estate property such as exempt property, post petition earnings, property excluded from the estate, property abandoned by the trustee, or debtor surplus. Relief from the automatic stay is not required. Nevertheless, the court will enter an order to specify what relief Rebecca Howell may pursue in state court. Property of the estate, however, is protected by the automatic stay under § 362(a)(3) and is subject to the superior rights of the trustee as a hypothetical lien judgment

creditor under § 544(a)(1) of the Bankruptcy Code. Rebecca Howell's motion for relief from the automatic stay to pursue equitable distribution is denied as it relates to property of the estate."); *In re Secrest*, 453 B.R. 623, 635 (Bankr. E.D. Va. 2011) ("The debtor's wife is entitled to proceed with the divorce case. Except as to the equitable distribution of property of the estate, the automatic stay does not apply in the first instance. She can accomplish much without relief from the automatic stay. There is nothing to prevent, as in *Robbins*, an equitable distribution hearing from proceeding provided that there is no order transferring property of the estate to the spouse. The equitable distribution hearing may proceed to liquidate the claim. Only property that is not property of the estate may be divided between the debtor and the debtor's wife. As in *Robbins*, a monetary award may be made.") (citing *In re Robbins*, 964 F.2d 342 (4th Cir.1992)).

Again, it appears something well short of a coincidence that the stay relief case law concerning domestic relations proceedings scantly – if ever – involves such matters pending in the State of Connecticut. That state's election to make marital dissolution and property distribution inseparable (an election almost certainly made without concern or regard for federal bankruptcy law) renders the allowance of stay relief nearly impossible. Not only would a debtor have to meet the usual burden of showing cause, satisfy the *Curtis* factors, and clear the heightened hardship-balancing hurdle, but such a debtor would have to show why the bankruptcy court ought to release control over the totality of the estate's assets to a foreign tribunal, since the same is needed if even the ministerial formality of ending a marriage is to be accomplished in Connecticut.[6]

[6] While not instantly at issue, there does remain a theoretical scenario – and one that may well suggest itself before the Debtor's bankruptcy is over – where stay relief could be properly afforded a Connecticut divorce court. Specifically, where a bankruptcy court finishes marshalling all of a debtor's assets, such that there is no longer any question as to the defined universe of those assets, finishes adjudicating any disputes as to the veracity of proofs of claims,

In light of this unique clash between the purposes of federal bankruptcy law and the mandates of Connecticut state divorce law, the Bankruptcy Court erred in affording stay relief herein. It is further urged that this Honorable Court offer some guidance on the situations, *vel non*, where it would be appropriate for a bankruptcy court to cede control of a debtor's entire estate to a Connecticut divorce court, as this appears to be an issue of first impression.

## IX. Conclusion

WHEREFORE, Ms. Hightower respectfully prays this Honorable Court (i) reverse the order of the Bankruptcy Court affording the Debtor relief from the automatic stay; (ii) remand this matter to the Bankruptcy Court with instructions to consider the stay relief motion in light of the *Curtis* factors and the hardship test; (iii) announce a standard to guide consideration of stay relief where Connecticut divorce proceedings are implicated; and (iv) afford such other and further relief as may be just and proper.

## X. Certificate of Compliance & Signature

This brief complies with the type-volume limitation of Rule 8015(a)(7)(B) or 8016(d)(2) because this brief contains 4,669 words, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D).

---

and otherwise wraps up all of its affairs save for actually distributing property, it may then be appropriate to afford stay relief to a Connecticut divorce court. But such a scenario is yet to present itself instantly and, thus, falls within the realm of dicta as of present.

Respectfully submitted,

Dated: February 17, 2016

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
12505Park Potomac Avenue
Sixth Floor
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 576-6885
mac@mbvesq.com
*Counsel for Dori Hightower*

## XI. Certificate of Service

I hereby certify that on this 17th day of February, 2016, a copy of the foregoing was served electronically upon counsel for all parties via the Court's CM/ECF system:

Dennis F. Hightower
1440 Whittier Place, NW
Washington, DC 20012
*Debtor*;

and

David E. Lynn, Esquire
15245 Shady Grove Road
Suite 465N
Rockville, Maryland 20850
*Counsel for the Debtor*;

and

Wendell W. Webster
Webster, Fredrickson, Correia & Puth
1775 K Street, NW
Suite 600
Washington, DC 20006
*Chapter 7 Trustee*

and

Office of The United States Trustee
115 South Union Street, Plaza Level

Suite 210
Alexandria, VA 22314

/s/ Maurice B. VerStandig ___________
Maurice B. VerStandig